HAGELSTEIN et al. v. BLASCHKE.

(Court of Civil Appeals of Texas. Amarillo. July 10, 1911. Rehearing Denied April 20, 1912.)

1. PLEADING (§ 406*)—OBJECTIONS—WAIVER.

Where an executrix pleads to the merits of a case, without having first filed a sworn plea, claiming her statutory right to not plead until the expiration of 12 months from the date of the probate of the will, she waives this right, and cannot object thereafter that the plaintiff's pleading fails to show that more than 12 months have elapsed since the probating of the will.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1355–1359, 1361–1365, 1367–1374; Dec. Dig. § 406.*]

2. APPEAL AND ERROR (§ 877*)—REVIEW—RIGHT TO OBJECT.

An appellant cannot complain of rulings, because they are prejudicial to a party who is not complaining on the appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3560–3572; Dec. Dig. § 877.*]

3. CANCELLATION OF INSTRUMENTS (§ 37*)—PLEADING—SUFFICIENCY.

Where the plaintiff's pleading sets out the facts and circumstances showing that a sale agreement was induced by fraud, states the relation of the parties to the suit, and then prays such equitable relief as he is entitled to under the pleading and proof, it is not insufficient for failure to show whether cancellation or damages is sought.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–80; Dec. Dig. § 37.*]

4. CANCELLATION OF INSTRUMENTS (§ 37*)—PLEADINGS—SUFFICIENCY.

Such pleading was sufficient to warrant either a total rescission, placing all parties in statu quo, or a recovery of the damages arising from the fraud alleged.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 66–80; Dec. Dig. § 37.*]

5. WITNESSES (§ 164*) — COMPETENCY — LETTERS OF DECEASED PERSON.

Letters written by a deceased person were not inadmissible in evidence under Sayles' Ann. Civ. St. 1897, art. 2302, providing that in actions against executors neither party may testify against the other as to any statement by the testator; such statute applying only to oral declarations of a deceased person.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 683–686, 688–695; Dec. Dig. § 164.*]

6. APPEAL AND ERROR (§ 1053*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action by the purchaser for equitable relief from a sale induced by fraudulent representations, the admission of evidence as to representations made by a third party was harmless, where the court instructed that the jury could not find for the plaintiff upon any representations made by such party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**7. EVIDENCE (§ 543*)—EXPERTS—COMPETENCY —VALUE OF LAND.**

A witness, who stated that he was in the land and abstract business and had been a county surveyor for a number of years, and knew the land inquired about and had run some of its lines, and that he had been engaged in buying and selling land in the county in which the land was situated, and also that he was farming several hunded acres, was competent to testify as to the value of the land inquired about.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

**8. WITNESSES (§ 138*)—STATEMENTS BY TESTATOR—ADMISSIBILITY.**

In a purchaser's action against the executor of a deceased vendor for equitable relief from a sale induced by fraud, the testimony of a third person, not a party to the suit, and not claiming under the deceased, was not inadmissible under Sayles' Ann. Civ. St. 1897, art. 2302, providing that in actions against executors neither party shall be allowed to testify against the other as to any statement by the testator, unless called for by the opposite party.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 574, 575; Dec. Dig. § 138.*]

**9. APPEAL AND ERROR (§ 877*)—RIGHT TO OBJECT.**

The appellant could not complain that the verdict was contrary to an instruction, relating solely to the interest of a party who was not complaining on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3560–3572; Dec. Dig. § 877.*]

**10. VENDOR AND PURCHASER (§ 43*)—CURE OF FRAUD.**

The vendors' fraud in showing the purchaser one tract of land and deeding him another was not cured by the fact that a second sale contract was made and interest paid by the purchaser, where, at the time of a second contract and of the payment, the purchaser did not yet know that he had been deceived.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 67, 68; Dec. Dig. § 43.*]

**11. CANCELLATION OF INSTRUMENTS (§ 46*)— ACTION BY PURCHASER—ADMISSIBILITY OF EVIDENCE—DEED.**

In a purchaser's action for equitable relief from a sale induced by fraud, a deed, executed and tendered by him to the party from whom he received title, was admissible in evidence to show his willingness to do equity, though the party to whom the tender was made was not the vendor with whom he had made the deal; plaintiff's deal having been with one who had merely a contract interest, and having received his deed from the holder of the legal title.

[Ed. Note.—For other cases, see Cancellation of Instruments, Dec. Dig. § 46.*]

**12. CANCELLATION OF INSTRUMENTS (§ 51*)— ACTION BY PURCHASERS—INSTRUCTION.**

Where, in a purchaser's action for equitable relief from a sale induced by fraud, the evidence showed that the plaintiff had sought to procure an adjustment of the wrong, and that the defendants had manifested no disposition to right it, an instruction that the plaintiff was not required to tender back the property to the defendant, if the defendant refused to do anything with reference to accepting it, was not open to the objection that it placed the. burden upon the defendants to take the initiative in offering to rescind.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 108; Dec. Dig. § 51.*]

**13. APPEAL AND ERROR (§ 231*)—PRESENTATION BELOW—SUFFICIENCY OF OBJECTION— INSTRUCTION.**

An objection to an instruction was not reviewable, where it did not point out wherein the instruction was erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1299, 1352; Dec. Dig. § 231.*]

**14. CANCELLATION OF INSTRUMENTS (§ 57*)— ACTION BY PURCHASER—VERDICT.**

Where a purchaser is induced by fraud to buy land, and pays therefor in cash and notes, which are held by the vendors, or for their benefit, at the time of the trial of the purchaser's action for equitable relief from the fraud, a verdict for him and against the vendors may be for a rescission, canceling his notes, and for the cash payment made by him, with interest from the date of the payment.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 114–118; Dec. Dig. § 57.*]

**15. TRIAL (§ 260*)—INSTRUCTIONS.**

It is not error to refuse a special instruction sufficiently covered by the main charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

Appeal from District Court, Hardeman County; S. P. Huff, Judge.

Action by F. J. Blaschke against Mamie B. Hagelstein, executrix, and others. From a judgment for plaintiff, part of the defendants appeal. Affirmed.

M. M. Hankins and D. E. Magee, of Quanah, and Swearingen & Tayloe, of San Antonio, for appellants. A. D. Dyess, of Temple, and Fires, Decker, Clarke & John, of Quanah, for appellee.

GRAHAM, C. J. This is an appeal from a judgment rendered by the district court of Hardeman county, wherein appellee, as plaintiff, recovered a moneyed judgment against Mamie B. Hagelstein, as executrix of the estate of her husband, Chris Hagelstein, and against George Hagelstein, and canceling and holding for naught two series of vendor's lien notes which had been executed and delivered by appellee as part of the purchase price for certain lands in Foard and Knox counties; the judgment also canceling and holding for naught the deed to said lands, which had been executed and delivered to appellee. Recovery was had on allegations by appellee of a fraud perpetrated on him in making the sale of the lands.

The record shows that prior to and on September 21, 1907, the land in controversy in this suit was owned by C. C. Hemming; that on the date last mentioned C. C. Hemming made and entered into a contract, in writing, with Chris and George Hagelstein, whereby the former agreed to sell and con-

vey to the latter about 27,000 acres of land, including the land in controversy, at $6.25 per acre on terms of $25,000 in cash when the deed should be executed by Hemming, the balance of the purchase price to be evidenced by eight vendor's lien notes for equal sums, one maturing each year and all bearing 6 per cent. interest, there being a clause in the contract requiring Hemming to accept from the Hagelsteins such vendor's lien notes as might be acquired by them in reselling the lands, in lieu of Hagelsteins' notes, and to release to Hagelsteins' vendees the lands so sold from the lien retained by Hemming; that, before the conveyance contemplated under this contract was executed and delivered by Hemming, the Hagelsteins contracted to sell a section of the land to appellee, having shown him the piece of land which he agreed to purchase; that a written contract was made and entered into between the Hagelsteins and appellee, whereby the Hagelsteins agreed to sell and appellee agreed to buy section 99, in block 44, Houston & Texas Central Railway Company lands, situated in Foard and Knox counties, at $13 per acre, on terms of $1,272 cash and balance in seven vendor's lien notes in equal amounts, maturing annually, the first note maturing January 1, 1910, interest being payable on all of the notes annually, the first interest installment to be paid on January 1, 1909; that by a deed, dated January 25, 1908, but acknowledged March 5, 1908, and recorded June 19, 1908, C. C. Hemming conveyed to appellee said section No. 99; and that, in consideration for said conveyance, appellee paid to the Hagelsteins $1,272 in cash, and executed and delivered to C. C. Hemming five vendor's lien notes for the sum of $664.53 each, maturing on January 1, 1911, 1913, 1914, 1915, and 1916, respectively, the interest on all being payable annually, and also executed and delivered to the Hagelsteins four vendor's lien notes for the sum of $736 each, and one for the sum of $738.45, maturing January 1, 1910, 1912, 1913, 1914, and 1915, respectively, the interest on all payable annually.

The record shows that the amounts received by Hemming and the Hagelsteins, respectively, arising from the sale to appellee, was in accordance with their respective interests in said section 99, arising from the contract of date September 21, 1907.

The record also shows that appellee paid the first installment of interest maturing on the above-described notes, which he had executed and delivered as part payment for the lands, and that on September 8, 1908, thereafter he filed suit against C. C. Hemming and the Hagelsteins, and that thereafter, Chris Hagelstein .having died testate, and his surviving wife, Mamie B. Hagelstein, having qualified as independent executrix, under her husband's will, on February 9, 1911, appellee, by an amended pleading, brought Mamie B. Hagelstein, as such executrix, as well as in her individual capacity, into the case. In this amended pleading, appellee alleged at great length all the facts and circumstances leading up to the execution and delivery to him by C. C. Hemming of the deed covering section No. 99, the fact that he had been shown one piece of land, while his deed covered another, and alleged such facts as, if true, clearly entitled him to a rescission of the sale to him, or a recovery for damages because of the fraud alleged, in the event the sale could, for any cause, not be canceled.

The pleading of the defendants below, so far as material in disposing of this appeal, will be discussed in this opinion in disposing of appellants' several assignments of error.

The cause was tried below before a jury, which returned their verdict, amply sufficient to support the judgment rendered, and the Hagelsteins alone appeal to this court therefrom.

The record is a voluminous one, the statement of facts containing 113 pages of closely typewritten matter, while the transcript contains 132 pages, also of closely typewritten matter; the appellants having assigned in the trial court 40 errors, 20 of which are brought before this court in appellants' brief, and on which appellants rely for reversal.

[1] Under appellants' first assignment of error, contention is made that the trial court erred in overruling Mamie B. Hagelstein's special exception to appellee's amended pleading; contention being based on the proposition that appellee's said pleading failed to show that more than 12 months had elapsed since the probating of the will of Chris Hagelstein. We cannot concur in appellants' contention made under this assignment, for the reason that appellee's pleading, while it does not show when the will of Chris Hagelstein was probated, for the same reason it fails to show that same was actually probated within 12 months before appellee's amended pleading was filed, and also fails to show that 12 months had not elapsed from the probating of the will to the date on which Mrs. Hagelstein urged her special exception. Appellee's pleading being in this condition, and Mrs. Hagelstein having pleaded to the merits of the case, without having first filed a proper sworn plea, claiming her right guaranteed under the statute, she will be held to have waived same. Lemmel v. Pauska, 54 Tex. 505.

Even if appellee's pleading had shown the probating of the will of Chris Hagelstein within 12 months of the filing of his amended pleading, under the authority of the case of Altgelt v. Sullivan, 79 S. W. 339, it would appear that the statute invoked has no application to this case.

Appellants contend, under their second

assignment of error, that the trial court erred in overruling their general demurrer to appellee's amended pleading, and submit three propositions, in substance, as follows: First, that C. C. Hemming is alleged to be the grantor, and no fraud is charged against him, or that he knew or ratified same; second, that appellee's pleading is insufficient to show a right of cancellation of the deed; and, third, that appellee's pleading fails to show whether cancellation or damages are sought. We have carefully read appellee's amended pleading, and think the allegations therein made sufficient, if true, to warrant cancellation of the sale of the land as against C. C. Hemming; he having reaped the benefits of the alleged fraud.

[2] If this were not true, however, as C. C. Hemming is not complaining in this court of this or any other ruling of the trial court, the verdict of the jury having been rendered on sufficient allegations and proof that appellants were guilty of such fraud as warranted the cancellation of the notes held by them, and said notes having been on the verdict of the jury canceled, the error complained of becomes immaterial, so far as appellants are concerned.

[3, 4] In so far as it is claimed that appellee's pleading is insufficient to show whether cancellation or damages is sought by appellee, we also cannot agree with appellants, for the reason that said pleading, as before stated, at great length sets out the facts and circumstances showing the fraud alleged, and also showing the relations of all the parties to the suit, and then prays in effect that a court of equity award him such relief as the facts alleged and the proof may show him entitled to. We think such a pleading amply sufficient to warrant a rescission; and, in the event the proof failed to show such conditions as would allow rescission, because of innocent purchasers having come in possession of some of the notes, or for some similar reason, it was also sufficient to warrant a recovery of damages arising from the fraud alleged. The recovery actually had below was total rescission and placing all parties in statu quo, which, we think was fully warranted by the record. Holland v. Western Bank & Trust Company et al., 56 Tex. Civ. App. 324, 118 S. W. 218.

Under appellants' third assignment, contention is made that the trial court erred in failing to grant appellants' motion to require appellee to elect whether he would rescind or sue for damages; but we think what we have said in disposing of the second assignment necessarily results in our overruling this one.

[5] Under appellants' fourth assignment, contention is made that the trial court erred in admitting as evidence several letters which had been written by Chris Hagelstein to appellee during the lifetime of Hagelstein,

and which refer to the land in controversy; the ground of the objection being the provisions in article 2302, Sayles' Civil Statutes. As we construe article 2302, the letters introduced do not fall within its provisions any more than would a deed or any other written instrument which had been duly executed by a person since deceased; and the purpose of the statute, we think, is confined to oral declarations of a deceased person, and not to writings duly executed by him while living.

[6] Under appellants' fifth assignment, it is contended that the trial court erred in admitting over their objections, certain statements and declarations made by one Jesse Bowmar; it being contended that Bowmar was not shown to be the agent of appellants, and that appellants were not therefore bound by his statements. As the record tends to show that Bowmar accompanied appellee and showed him the lands which he was supposed to be buying, at the special request of Chris Hagelstein, and because of Bowmar's supposed familiarity with the land, and the statements and declarations made by Bowmar were so made while showing appellee the land, and which tended to identify the land which appellee thought he was buying, we are not prepared to say that the testimony complained of was not admissible. Even if it were not admissible, however, the error was fully cured by the trial court in his charge to the jury, wherein he expressly instructed them that they could not find for plaintiff, either for rescission or for damages, upon any representations made by Bowmar.

[7] Under appellants' sixth assignment, it is contended that the trial court erred in admitting the testimony of E. I. Flynt as to the value of said section 99 and the section immediately adjoining the same; contention being made that the witness did not show himself sufficiently acquainted with values to entitle him to testify referring thereto. The record shows that this witness testified that he was in the land and abstract business and had been the county surveyor of Hardeman county, and had been such surveyor at the time Foard county composed a part of Hardeman county; that he knew the location of the lands inquired about, had run some of the lines of section 99 in 1909; that he had been engaged in buying and selling land in Hardeman and other counties for the past 20 years, had not done much buying or selling in Foard county; that he was also farming something like seventeen or eighteen hundred acres of land; that he had been surveyor for 25 years and, prior to surveying Foard county land, had worked in Foard county. He was then permitted to testify as to the market value of section 99, as well as the market value of the section adjoining. Adjoining section, from the balance of the evidence, tending to show that it

was the one shown appellee, while his deed called for section 99. We think the trial court did not err in permitting this witness to testify as to the market value of either section 99 or the one adjoining it; and therefore the sixth assignment is overruled.

Under appellants' seventh assignment, complaint is made that the trial court admitted testimony of R. J. Reed, over their objections; but we have examined the bill of exception in connection with the balance of the record, and think there is no merit in this assignment, and it is therefore overruled.

[8] Under appellants' eighth assignment, it is contended that the trial court erred in permitting J. B. Dyees to testify as a witness, over appellants' objections, to statements made by Chris Hagelstein to the witness; appellants basing their contention on the proposition that, under article 2302, the same was not admissible. In this contention, we do not concur, and think that a third person, who is not a party to a suit, and is not claiming under the deceased, can testify to statements made by the deceased, as was done in this case.

[9] Under appellants' ninth assignment, it is claimed that the verdict of the jury is contrary to the special charge asked by C. C. Hemming and given by the trial court, to the effect that there was no allegation in plaintiff's petition as to any fraud on the part of C. C. Hemming, or that he participated in any fraud. Even if the verdict of the jury should be held to be contrary to the charge of the court in this particular, C. C. Hemming alone could complain, which he is not doing in this court, and appellants' contention is therefore without merit.

Under appellants' tenth assignment, it is claimed that the trial court erred in overruling appellants' motion for a new trial, based on the proposition that there was no evidence that Chris Hagelstein made any representations as to the land before plaintiff's original purchase of the same, and because it was not shown that plaintiff was in a position to rescind, in that it was not shown that he in fact owned said land unincumbered and was in a condition to rescind the same, or that the record shows that the parties can be placed in statu quo. We think the record amply shows that Chris Hagelstein made such representations, and at such times, as warranted a rescission; and there is nothing in the record tending to show that appellee was not in position, in case of rescission, to place both the Hagelsteins and Hemming in the same condition they occupied before the execution and delivery of the deed. In fact, the judgment rendered accomplished that result.

[10] Under appellants' eleventh assignment, it is claimed that the verdict and judgment is contrary to the law and the evidence, in that the record shows that, even if fraud was perpetrated in showing the land in the

first instance, it was cured when the second contract was made, which was a compromise, and thereby cures all fraud perpetrated, if any, until that time, not only as to the location of the land, but as to its quality. The record tends to show that appellee, even in the compromise settlement, was misled and deceived, both as to the location of the land covered by his deed and as to its value; and we think the pleading and proof amply sufficient to support the judgment that was rendered, in that the record shows that appellee did not discover that he had been deceived in the compromise settlement until after he had paid the first interest installment; and the record tends to show that he promptly brought this suit upon the discovery of that fact.

[11] Under appellants' twelfth assignment, complaint is made that appellee was permitted to introduce in evidence a deed which he and his wife had executed, and which they tendered to C. C. Hemming, reconveying section 99 in controversy. We think in permitting this evidence there was no error, as it tended only to show a willingness and desire on the part of appellee to do equity, while he was praying at the hands of the court that equity be meted out to him.

[12] Under appellants' thirteenth assignment, complaint is made that the trial court gave in charge to the jury the following: "In order to warrant the plaintiff to rescind, he must have acted promptly upon the discovery of the misrepresentations, if any, so made, and should thereupon have tendered and offered to reconvey the land back to the defendants, and offered to restore them to the same position they were in before the sale of the land to the plaintiff. If you find that he did not offer to restore the land upon discovering the land was not in the condition as represented, if in fact it was not as represented, or if you shall find that there were misrepresentations as to its quality and kind, made to plaintiff by Chris Hagelstein when he sold the land to plaintiff, and upon learning of such misrepresentations the plaintiff did not, within a reasonable time, offer to restore the same and reconvey, then you should find against the plaintiff on the question of rescinding the sale, unless you shall find that the defendant refused to do anything with reference to accepting back the land or possession thereof; and in case you so find, under such circumstances, then plaintiff was not required to make such tender." Contention being made that said charge placed the burden upon the defendants to take the initiative in offering to rescind. We think the testimony amply sufficient to warrant the court in framing the charge as it was framed; the record tending to show that appellee had sought to procure, at the hands of appellants, an adjustment of the wrong— they manifesting no disposition to right the wrong.

[13] Under appellants' fourteenth assignment, it is claimed the trial court erred in charging the jury as follows: "You are instructed in this case that you cannot, under the contract between C. C. Hemming and C. and G. Hagelstein, render a verdict against C. C. Hemming for damages and in abatement of the notes held by him. If you find any damages herein under this charge and the evidence, you should assess such damages against G. Hagelstein and Mamie B. Hagelstein, as executrix of the will of Chris Hagelstein; and you shall not find any damages against Mamie B. Hagelstein personally." We hardly believe this assignment so briefed as to require a disposition thereof upon its merits at our hands, in that no proposition is submitted tending to call attention to the reason why appellants think the charge given was erroneous. Without further comment, however, believing that the pleadings and evidence fully warranted the charge, and that no injury under the law was done appellants therein, the assignment is overruled.

Under appellants' fifteenth assignment, complaint is made of a portion of the court's charge as given to the jury. Believing, however, that no error was committed in so doing, the assignment is overruled.

[14] Appellants' sixteenth assignment is based upon the following charge, given by the court to the jury: "If you find that plaintiff, under the facts and charge given you, is entitled to a rescission, then you should return a verdict for the plaintiff for a rescission, canceling all the notes executed by him, and for the cash consideration paid by him, as against G. Hagelstein and Mamie B. Hagelstein, as executrix of the will of Chris Hagelstein, with 6 per cent. interest per annum from date of such payment." As the evidence shows, without contradiction, that the notes executed by appellee and delivered to the Hagelsteins were in their possession at the time of the trial, and that they had received the benefit, also, of the cash payment made by appellee at the time he purchased the land, we think the charge a correct presentation of the law, as applied to the facts on the issue of rescission as between appellee and the Hagelsteins, and therefore overrule the assignment.

Under appellants' seventeenth assignment, complaint is made to a portion of the court's charge, as given to the jury, as follows: "The burden is on the plaintiff to prove by a preponderance of the evidence that Chris Hagelstein made the representations; that the same were not true as made; that he relied thereon, and was induced thereby to purchase the land, and that such representations were material; and that he is entitled to damages, or to rescind the sale." We have examined the record in connection therewith, and, believing no injury was done appellants, the same is overruled.

Appellants, under their eighteenth assignment, contend that the trial court erred in overruling portions of their twenty-seventh ground in their motion for a new trial; the effect of the contention being that the trial court erred in failing to expressly inform the jury that the burden of proof was upon the plaintiff to establish, by a preponderance of the evidence, the facts entitling him to recover. The trial court did expressly tell the jury that the burden was on the plaintiff, as shown in the paragraph of the charge, above copied, in disposing of the seventeenth assignment; and there is no merit in the eighteenth assignment.

[15] Under appellants' nineteenth assignment, it is contended that the trial court erred in failing to give in charge to the jury a special charge, as requested by them. We think, however, in so far as said special charge covered the law in this case, under the pleadings and the proof, that the issue sought to be submitted was sufficiently covered by the court in his main charge, and therefore overrule the nineteenth assignment.

The remarks just made in disposing of the nineteenth assignment apply with equal force to the twentieth assignment, under which it is complained that the trial court erred in failing to give in charge to the jury a special charge requested by appellants, and for this reason the twentieth assignment is overruled.

Believing that no reversible error is pointed out, and further believing substantial justice was meted out in the judgment rendered in the trial court, the judgment of the trial court will be in all things affirmed; and it is so ordered.