No. 2325.

C. H. MOORES, EXECUTOR, *v.* C. B. WILLS AND WIFE.

1. HOMESTEAD.—A loan of money secured by a deed absolute on its face to the homestead of the debtor, cotemporaneous with which is executed an agreement in writing to reconvey on the repayment of the money loaned, is invalid, either as a conditional sale or mortgage, when not signed and executed by the wife as required by the statute.

2. SAME—EVIDENCE.—In a suit prosecuted by the executor of the creditor to foreclose the lien claimed under such a deed, when the defense relied on was that the property conveyed was at the time of making the deed a homestead, the defendant may testify to any facts tending to show that the land was a homestead at the date of the execution of the deed. Such testimony "as to any transaction with, or statement of the testator," is not within the inhibition contained in article 2248, Revised Statutes.

8. HOMESTEAD.—The fact that the wife never has lived upon the place occupied and dedicated by the husband as a homestead, can not render it less the homestead of the family; following Henderson v. Ford, 46 Texas, 628.

4. SUBROGATION—QUÆRE.—As to whether one claiming a lien on a homestead, secured by a mortgage executed by the husband, and who pays the amount due to the State from the debtor and receives in the debtor's name the patent to the land, is thereby subrogated to the rights of the State, and entitled to enfore a lien on the land for his re-imbursement, *quære.*

5. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—When, in a motion for new trial on account of newly discovered evidence, it is apparent from the facts stated that a failure not to discover the evidence sooner was negligence, a new trial will be refused. A motion for new trial for such a cause is fatally defective when not supported by the affidavit of the party seeking the new trial.

ERROR from Bowie. Tried below before the Hon. W. P. McLean.

*F. M. McHenry* and *Henry & Henry,* for plaintiff in error: On their proposition that the court erred in allowing the defendant, C. B. Wills to testify against the plaintiff as to the matter referred to in the opinion, they cited Simpson v. Brotherton, 62 Texas, 170; Heard v. Busby, 61 Texas, 13; Parks v. Caudle, 58 Texas, 216.

That the court erred in finding and adjudging that the land in controversy was the homestead of the family of the defendant C. B. Wills and wife, at the time of the execution of the deed from C. B. Wills to E. H. Moores, deceased, on the seventh day of April, 1880, they cited Constitution of 1876, section 51; Thompson on Homesteads and Exemptions; Barnes v. White, 53 Texas, 628; Houston & Great Northern Railroad Company v. Winter, 44 Texas, 598; Andrews v. Hagadon, 54 Texas, 576; Peregoy v. Kottwitz, 54 Texas, 497; Keith v. Hyndman, 57 Texas, 430, 431; Fort v. Powell, 59 Texas, 321.

*J. H. Talbot* and *Todd & Hudgins,* for defendant in error, that the transaction constituted a mortgage, cited Alstin v. Cundiff, 52 Texas, 453; Loving v. Milliken, 59 Texas, 423; Calhoun v. Lumpkin, 60 Texas, 185.

That there was no error in refusing a new trial, they cited Traylor v. Townsend, 61 Texas, 144; Allyn & Co. v. Willis & Bro., 65 Texas, 65; Madden v. Shapard, 3 Texas, 49; Frizzell v. Johnson, 30 Texas, 32.

GAINES, ASSOCIATE JUSTICE.   The testator of plaintiff in error brought this suit against the defendants in error to recover a tract of land; or, in the event the court should be of opinion that he was not entitled to a judgment for the land, for a decree enforcing certain liens thereon.   After first alleging his ownership of the premises in general terms, and the defendant's trespass, the plaintiff in his petition sets forth his title specially, averring that he loaned the defendant, C. B. Wills, one hundred and fifty dollars, and that thereupon, for the purpose of securing the loan, the latter executed to him a deed for the land in controversy, absolute upon its face.   He also averred that at the same time he executed to defendant an agreement binding himself to reconvey the property upon the payment of the money so lent, with the interest thereon.

Now, it is clear that the transaction, as alleged in plaintiff's petition, was merely a mortgage.  There is a debt to be secured, a conveyance for the purpose of securing it, and a defeasance, to take effect upon the payment of the debt.   (Baxter v. Dear, 24 Texas, 17.)

The defense was that at the time of the transaction the premises in controversy were the homestead of defendants, who were then husband and wife, and that the attempted incumbrance was therefore void under the Constitution of our State.  If a homestead, the transaction could not take effect, either as a conditional sale or a mortgage, because the deed from defendant Wills was neither signed nor acknowledged in any manner by his wife.   The court below found the issue of homestead or not in favor of defendants, and gave them judgment accordingly.

Defendant C. B. Wills was permitted to testify, over the objections of plaintiff, as to facts tending to show that the land in controversy was his homestead in April, 1880, which was the time of the execution of the mortgage from him to plaintiff's testator.   Plaintiff excepted to the ruling of the court, and now

assigns it as error. The ground of the objection was that the suit was being prosecuted by an executor, and that therefore defendant was incompetent to testify under the statute. The language of our statute, in so far as it bears upon the question before us, is: "In actions by or against executors * * * neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator. * * * (Rev. Stats., art. 2248.) Now, the question is: Was the defendant permitted to testify as to any transaction with plaintiff's testator? He testified neither to the loan of the money set up in the petition, nor its payment; nor to the deed executed by himself, nor the defeasance executed by the testator. His testimony was as to his purchase of the land; the intention in purchasing it; his sale of his former homestead, prior to the transaction in question in this suit; his removal of his household goods upon the place, and his occupancy of one of the houses upon it, when the deed was executed; and the absence of his wife and children in Indiana, and the reason of their absence. While the tendency of this testimony is to materially affect the validity of the transaction between the witness and plaintiff's testator, it is not testimony " as to" the transaction itself. If the intention had been to exclude parties in such cases from testifying about any fact or facts which in any wise affected a transaction in issue in any sense, it seems to us other and more comprehensive words would have been used. The transactions and conversations between two persons are often known to them only; and it would seem that the object of the exception made by the article from which we have quoted, was to preclude the injustice of permitting one party to the record to testify in regard to matters about which, from the very nature of the case, it was not probable that his testimony could be rebutted. Death having sealed the lips of one of the persons who best knew and was most interested in the transaction, it would seem impolitic to remove the bar of the common law which excludes the testimony of the other. This appears to be the reason and spirit of the article cited; and if so, the rule would not apply as to facts and circumstances which, though affecting a transaction, constitute no part of it. Statutes permitting parties to testify, being remedial in their character, receive a liberal construction. (1 Wharton's Evidence, sec. 464; see also Roberts v. Yarboro, 41 Texas, 450; Runnels v. Belden, 51 Texas, 48; Bennett v. Frary, 55 Texas, 145.)

The Constitution of Arkansas contains the same provision in

relation to the testimony of parties, which is found in the article of our Revised Statutes now under consideration; and the Supreme Court of that State hold, that "it was not designed to exclude the testimony of all such parties as to all matters in controversy in which the testator or ward had been interested, but only as to such matters as were strictly personal, and in which, from the nature of the case, the privilege of testifying could not be reciprocal and of material advantage." (Rapalje on Witnesses, p. 158, sec. 102, citing Giles v. Wright, 26 Arkansas, 476.) The matters about which the defendant was permitted to testify were probably as well known to others as to the testator of plaintiff; and plaintiff was at no greater disadvantage in regard to the testimony than the testator would have been, had he been alive and the party to the suit; and hence we conclude that the court below did not err in admitting the testimony complained of by appellant.

Nor do we think the court erred in finding that the land in controversy was the homestead of the defendants at the time of the executing of the conveyance to plaintiff's testator. Defendant, C. B. Wills, testified, that in 1878, he took his wife and children to Indiana, intending to return and make his home upon the premises in controversy, upon which there were two houses and some cleared land; that shortly after he moved his household effects there and lived in one of the houses, that in 1879 he sold his former homestead in Texarkana; that in 1880, he was living upon the place, and borrowed the one hundred and fifty dollars from plaintiff's testator to bring his family from Indiana · intending to remove them to the place to reside upon it as their home, and that subsequently during that year he did bring them to the place, and that they have ever since resided there. Mrs. Wills's testimony was to the same effect, and they were corroborated in important particulars by a disinterested witness. There was no rebutting testimony. This, we think, amply sufficient to warrant the finding of the court. The homestead right may attach, though the wife never moved upon it. It becomes the homestead from the time of its dedication as such by the head of the family. (Henderson v. Ford, 46 Texas, 628; Constitution of 1876, art. 16, sec. 50, 51.)

Under appellant's fourth assignment of error, that the court erred in finding the deed to Moores a mortgage, the proposition is submitted that "to authorize a court to declare a deed absolute on its face a mortgage, there must be clear proof that the

same was executed and intended as a security for a debt." To this it must be answered that the petition alleges expressly that C. B. Wells executed the deed "for the purpose of securing the payment of said sum of one hundred and fifty dollars."

There was no error in the court's refusing to give plaintiff a judgment for the money alleged to have been paid by him for the purpose of redeeming the land from the lien of the State. The sole testimony bearing upon this question is that of a witness who testified "that while in Austin, Texas, in 1882, he received from E. H. Moores a sum of money, he thinks about one hundred and fifty dollars; to pay the balance due the State for land in dispute, and paid the same over to the State and took out the patent as above referred to." We do not think this evidence sufficient to establish the allegation in plaintiff's petition. If there was a lien on the land on behalf of the State there was certainly better evidence of the fact. But admitting that such lien existed and Moores paid it, having no interest in or valid claim upon the land to protect, would it not be deemed a voluntary payment by a stranger to which the doctrine of subrogation would not apply? (Sheldon on Subrogation.)

The motion for new trial was not sufficient, and the court did not err in overruling it. The answer distinctly set up that the land in controversy was the homestead of defendants at the time of the transaction between the husband and Eli H. Moores, and the plaintiff can not be heard to say after judgment that he was surprised by defendant's testimony upon the point. In regard to the newly discovered evidence, the motion is deficient in more than one particular. It does not appear why plaintiff did not have this testimony upon the trial. He must have known that the witnesses who levied upon the land at and about the date of the mortgage were most likely to know the facts in regard to Wells's occupancy; and it was a want of diligence on his part not to have discovered that their testimony was material. The motion is not accompanied by the affidavit of the newly discovered witnesses. This is sought to be excused by the short time which was to elapse before the adjournment of the court; but admitting the sufficiency of this excuse, the motion is fatally defective in not being supported by the affidavit of plaintiff himself to the facts stated in the motion, which do not appear by the record.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered October 25, 1887.